# Allentown *v.* Lehigh Valley Transit Company, Appellant.

*Street railways—Municipal consent—Repair of streets.*

Where a city by various ordinances granting consent to different street railway companies to use streets, provides that in case a single track is laid, the company must, both as to original paving or subsequent repair, pave and repave the space between the tracks, and an additional width of two feet outside of each rail, while in case of double tracks the company must originally pave the space between the two tracks, between the rails of each track and two feet outside of the rails, and keep in repair the whole street from curb to curb, a company which changes its line from a double track to a single track will not be obliged thereafter to repave from curb to curb, where the ordinance authorizing the change provides that the single track substituted for the double track shall be "subject to all of the provisions of existing ordinances in respect to single track railways on the streets of this city."

Argued Dec. 9, 1908. Appeal, No. 54, Oct. T., 1908, by defendant, from judgment of C. P. Lehigh Co., Sept. T., 1907, No. 100, on case stated in suit of City of Allentown v. The Lehigh Valley Transit Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Case stated to determine liability of defendant to keep a street in repair. Before HEYDT, P. J., specially presiding.

The opinion of the Superior Court states the case.

*Error assigned* was in entering judgment for plaintiff on case stated.

*Arthur G. Dewalt,* with him *R. E. Wright,* for appellant.

*Leo Wise,* city solicitor, for appellee.

OPINION BY HEAD, J., July 14, 1909:

From an examination of the case stated and the several ordinances made part thereof, it appears that prior to the incorpo-

ration of the defendant, a number of independent street railway companies were operating cars in the city of Allentown. Each one of these companies secured by ordinance the necessary municipal consent to enable it to operate its cars along the streets it occupied.

A brief examination of these ordinances, with reference to the dates of their enactment, will reveal, we think, the development on the part of the city of a uniform and continuous policy regulating the operation of cars along the streets and defining the conditions on which applicants for such franchises could secure the necessary municipal consent.

The earliest, in time, of these ordinances was approved October 5, 1889. The portions of it which have been printed in the paper-book indicate that the city therein granted to the Allentown Passenger Railway Company, the right to construct a single-line track on certain streets and operate its cars thereon. In accepting the ordinance, the company was required to agree that it would keep the portion of the street occupied by its track, and an additional width of two feet outside of each rail, in the same condition, with relation to paving or macadamizing, as the city would keep the remaining portion of the street.

By an ordinance approved March 13, 1891, some additional franchises were granted to the same company, and again the city imposed upon the company the like obligation as to the new streets upon which its track might be laid.

On March 25, 1893, an ordinance was adopted granting to the Lehigh Valley Traction Company, the right to operate a double-track railway within the city limits along certain streets therein specified. This ordinance, apparently the first authorizing a double line of tracks upon any city street, required the company, in case the city should decide to pave any street upon which its tracks were laid, to pay for the cost of said paving on that portion of the street "lying between the tracks, between the rails of each track, and for two feet outside." The third section of the ordinance dealing with the question referred to, further provided: "The said Traction Company shall keep in repair Sixth street from Union to Tilghman street from curb to curb." The company therein named accepted the provisions

of the said ordinance and constructed a double-track line on Sixth street between the cross streets named, and from that time down until the making of the change hereinafter referred to, continued to perform the obligation imposed upon it by the ordinance.

On May 6, 1893, another ordinance was approved, granting to the Allentown Passenger Railway Company and to the Allentown & Bethlehem Rapid Transit Company, the right to extend their lines over certain city streets therein specified. It provided that whenever the city would undertake to permanently improve any of the streets occupied under this ordinance, the companies would bear the expense of so improving that portion of the street "lying between the tracks, between the rails of each track, and for two feet outside of each rail." And it further provided that such companies should not only bear this proportion of the cost of the original improvement, but in case double tracks were laid on any street, as to the repairs of said street, the obligation of the companies should be as expressed in the following language: "Whenever double tracks are laid on said streets, the said companies shall keep such streets in repair from curb to curb."

Whilst, therefore, the city was dealing with a number of independent and perhaps rival companies, it evidently aimed at placing each company on the same footing. Where but a single track was laid upon a street, the obligation of the company owning and operating such line of track was the same. In such case the obligation, whether relating to original paving or to keeping the street in repair, was confined to the space between the tracks and an additional width of two feet outside of each rail. Where a double line of track was constructed, the company was required to originally pave or improve that portion of the street between the two tracks and between the rails of each track, and an additional width of two feet outside of said rails. As the construction of a double line of track on a city street has a natural tendency to drive a considerable portion of the traffic to the sides of the street, the city required of the companies availing themselves of that privilege that they should keep the entire street from curb to curb in repair.

The municipal legislation on this subject seems to have remained in the condition already described without change from 1893 to 1899. During that period there was little room for any contention as to the duties owed to the city by a railway company operating a single line of track along a city street. If during that period a new company had made application to the city for leave to construct and operate a single line of track along certain streets theretofore unoccupied, and the municipality had granted the franchise "subject to all of the provisions of existing ordinances in respect to single-track railways on streets of this city," we think the obligations of such a company, after accepting the grant, would have been clearly defined by the ordinances already referred to.

On May 22, 1899, an ordinance was approved authorizing the Lehigh Valley Traction Company, etc., "to abandon, take up and remove one of their tracks on North Sixth street, Allentown, Pa., on the following conditions, to wit, first, that the remaining track be removed to the center of the street and be there maintained subject to all of the provisions of existing ordinances in respect to single-track railways on streets of this city." In pursuance of this ordinance one of the tracks of the company named was taken up, the other was removed to the center of the street, and thereafter the railway company in fact owned and operated but a single line of track on Sixth street instead of the double line of track which had been originally authorized by the ordinance of March 25, 1893.

The city now insists that although the railway company operates but a single line of track on Sixth street, as it does on a number of other streets of the city, it must still continue to keep in repair between Union and Tilghman streets the whole of Sixth street from curb to curb. The defendant, which has succeeded to the rights and assumed the obligations of all of the independent companies heretofore mentioned, contends that by the terms of the ordinance of 1899 just quoted, its obligations on Sixth street have become precisely the same as on any other street on which it operates but a single line of track. As we view the case, this claim rests upon substantial grounds.

The city had the right to classify all companies operating

upon its streets, and to declare that those operating single-track railways should pay one consideration for the privilege, those operating double-track another. Had it seen fit to provide that single-track lines should pay an annual money compensation and so declared by ordinance, whilst double-track lines should render their return to the city by paving and keeping in repair the streets occupied, its right to do so would be unquestioned. If under such conditions a company operating a double line should, with the consent of the city, give up a portion of the street theretofore lawfully occupied, and thereafter operate but a single line; and if in giving its consent the city should impose the condition that thereafter such single-line track should be "maintained subject to all of the provisions of existing ordinances in respect to single-track railways on streets of this city," how could such company defend against the claim of the city that it must thereafter pay the annual money compensation exacted from companies operating single lines?

It seems to us that such a construction of the several ordinances leads to results fair and equitable as between the city and the defendant, and if so, ought to prevail where the meaning of the language used in the ordinances is in any way obscure. We can see no reason why a burden should be imposed on the defendant as a consideration for operating a single line of railway along Sixth street that is not imposed upon it in its operation of like lines upon other streets. Of course, if it were clear that the company had contractually accepted such a burden, it ought not to be heard to complain. Looking, however, broadly at the entire field of municipal legislation on the subject of street railways in the city of Allentown, and finding upon such view that the city has heretofore uniformly measured the obligations of a company operating a double-track line by one standard, and those of a company operating a single-track line by another, we are led to the conclusion that when the city declared that after the change was made in Sixth street, the remaining single track must be "maintained subject to all of the provisions of existing ordinances in respect to single-track railways on streets of this city," it intended that the original obligation assumed by the company when two tracks were

authorized and constructed, should be so modified that thereafter its responsibilities should be measured by those ordinances adopted for the purpose of regulating single-track lines on the streets of the city.

Judgment reversed.